**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**


| | |
|---|---|
| **VALERI DILLOW,** | **CIVIL ACTION NO. 3:12-CV-98** |
| **CHIKA GERLADINE AHUNANYA,** | **3:12-CV-99** |
| **ERNEST AKNONWAH,** | **3:12-CV-100** |
| **TABITHA BARRETT,** | **3:12-CV-101** |
| **AMANDA BARTON,** | **3:12-CV-102** |
| **JAMIE BEACHLEY,** | **3:12-CV-103** |
| **CHRISTINE KAMUGA,** | **3:12-CV-104** |
| **NIKKI KENDIG,** | **3:12-CV-105** |
| **DIVINE KUM,** | **3:12-CV-106** |
| **LAVERNE PAULINE WATERS,** | **3:12-CV-107** |
| **SUFYAN TURAY,** | **3:12-CV-108** |
| **VICTORINE NGANG,** | **3:12-CV-109** |
| **NUR MUHAMMED, and** | **3:12-CV-110** |
| **STEPHANIE MITCHELL,** | **3:12-CV-111** |

Plaintiffs,

v.                                                                    **(JUDGE GROH)**

**CHARLES H. POLK,**
**MOUNTAIN STATE UNIVERSITY, INC.,**
**MOUNTAIN STATE UNIVERSITY BUILDING COMPANY,**
**MOUNTAIN STATE UNIVERSITY FOUNDATION, INC., and**
**MOUNTAIN STATE UNIVERSITY ENDOWMENT FUND INC.,**

Defendants.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS'**
**MOTIONS TO REMAND**

Currently pending before the Court are the Plaintiffs' Motions to Remand [Doc. 7],

filed on October 22, 2012.  Defendants Mountain State University, Inc., Mountain State

University Building Company, Mountain State University Foundation, Inc., and Mountain

State University Endowment Fund, Inc. filed their Response in Opposition to Plaintiffs'

Motions to Remand [Doc. 12] on November 5, 2012.  Defendant Charles H. Polk filed his

1

Response in Opposition to Plaintiffs' Motions to Remand [Doc. 13] on November 7, 2012. The Plaintiffs filed their replies [Doc. 14] on November 14, 2012. The Court, having reviewed the motions and the memoranda submitted with regard thereto, finds that the Plaintiffs' motions should be **DENIED**.

## BACKGROUND

### I. Factual Allegations

Plaintiffs are former nursing students at Mountain State University, Inc. Plaintiffs are all citizens of Jefferson County, West Virginia. Defendant Mountain State University, Inc., was originally founded as a junior college in 1933 under the name of Beckley College. In 1991, under the direction of Defendant Polk, the President of Mountain State University from 1990 until 2012, Beckley College rebranded itself as The College of West Virginia. In 2001, still under the direction of Defendant Polk, The College of West Virginia rebranded itself as Mountain State University, Inc. ("MSU").

Plaintiffs allege that the Defendants orchestrated a scheme to generate cash for their use, by increasing enrollment to bring in as much federal student loan and grant money as possible while at the same time withholding information regarding its students' academic progress from accrediting and government agencies. As part of the scheme, Plaintiffs argue that Defendant MSU focused on enrollment growth and had a one hundred percent (100%) acceptance rate. Plaintiffs contend that nearly ninety percent (90%) of Defendant MSU's operating revenue came from student tuition and charges, most of which comes in the form of taxpayer subsidized grants, scholarships, and federal student loans. Plaintiffs state that Defendant MSU's graduation rate is 2.5% for students seeking

bachelor's degrees. As a result, Defendant MSU was placed on a provisional certification with the United States Department of Education because it had not demonstrated an ability to monitor the academic progress of its students in violation of the federal Satisfactory Academic Progress requirements. On July 19, 2012, the United States Department of Education placed Defendant MSU on heightened cash monitoring. Also in 2012, the West Virginia Higher Education Policy Commission ("HEPC") conducted an investigation into Defendant MSU's use of state grant and scholarship money. The HEPC discovered that Defendant MSU utilized state funds that were to be disbursed to students for its own means.

Plaintiffs contend that Defendant Polk directed the spending of the proceeds from the racketeering activities, including the construction of a life size statute of himself at MSU, the purchase of two jet airplanes that he employed for personal use, and the lavish salaries of participants in the racketeering scheme. Additionally, Plaintiffs allege that in 2009, Defendant Polk's salary as President of MSU was $1,843,746.00, representing 3.5% of MSU's annual budget. Plaintiffs argue that Defendant Polk's salary was the highest percentage of a college budget received by any president of a private university in 2009. Additionally, Defendant Polk received at least $3,340,085.00 in compensation from 2008 to 2010. Defendant Polk also coauthored two books, *Apex Thinking* and *What Leaders Believe*, outlining his thoughts on "leadership." Mountain State University Press published the two books. Plaintiffs allege that MSU students were required to purchase the books and that *Apex Thinking* was used as a play book in the execution of the Defendants' ongoing racketeering scheme.

All fourteen Plaintiffs pursued a Bachelor of Science in Nursing (BSN) degree from

Defendant MSU. Plaintiffs allege that the Defendants relentlessly recruited them for MSU's nursing program. MSU represented to the Plaintiffs that they would earn their degrees in a short period of time, pass their exams, and secure jobs after graduation. Plaintiffs also claim that Defendants advised and pressured them to quit their jobs or become a part-time employee and take out the maximum amount of student loan debt in order to create more financial gain for the Defendants.

Plaintiffs contend that Defendants repeatedly lied, made false promises, and intentionally concealed and withheld material information from the Plaintiffs concerning the following eight topics: (1) the status of their applications, (2) the requirements for acceptance into the nursing program, (3) the requirements to complete a BSN degree, (4) the accreditation status of the nursing program, (5) the amount of time it would take to complete a BSN degree, (6) the likelihood of graduation, (7) the Plaintiffs' ability to sit for NCLEX-RN exams, and (8) the Plaintiffs' ability to graduate. Plaintiffs also allege that Defendants represented MSU's nursing program as fully accredited by the National League for Nursing Accrediting Commission ("NLNAC") and the West Virginia State Board of Examiners for Professional Nurses ("WVBRN"). Plaintiffs state that at the time of Defendants' representations, MSU had lost full accreditation with the NLNAC. In March 2010, the WVBRN placed MSU under investigation and ordered it to stop all admissions to the nursing programs. Eventually both the NLNAC and the WVBRN withdrew its accreditation of the MSU's School of Nursing program. Also, the Higher Learning Commission withdrew MSU's entire school wide accreditation on July 10, 2012, which becomes effective on December 31, 2012. As a result, each of the Plaintiffs have completed nursing courses at MSU that cannot be transferred to other schools, and none

of the Plaintiffs graduated with an accredited degree from MSU.  Also, Plaintiffs are unable to sit for the NCLEX-RN licensing exam.

## II. <u>Procedural History</u>

On August 6, 2012, Plaintiffs filed their Complaints in the Circuit Court of Jefferson County, West Virginia.  On August 22, 2012, Defendant Charles H. Polk was served with Plaintiffs' original Complaints. The remaining Defendants Mountain State University, Inc., Mountain State University Building Company, Mountain State University Foundation, Inc., and Mountain State University Endowment Fund, Inc. did not receive service of the original Complaints.

On September 4, 2012, Plaintiffs filed their First Amended Complaints in the Circuit of Jefferson County, West Virginia.  Plaintiffs alleged nine causes of action in their Amended Complaints.  Plaintiffs' first cause of action arises under the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1692(c) and (d).  On September 5, 2012, Defendants Mountain State University, Inc., Mountain State University Building Company, Mountain State University Foundation, Inc., and Mountain State University Endowment Fund, Inc. accepted service of the First Amended Complaints.  On September 20, 2012, Defendants filed their Notice of Removal to remove this action to the United States District Court for the Northern District of West Virginia [Doc. 1].

Defendants contend removal is proper pursuant to 28 U.S.C. § 1331 because Plaintiffs' Amended Complaints present claims arising under provisions of federal law, specifically claims for violation of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1692(c) and (d) ("RICO").  On October 22, 2012, Plaintiffs filed their Motions to Remand [Doc. 7].  Defendants Mountain State University, Inc.,

Mountain State University Building Company, Mountain State University Foundation, Inc., and Mountain State University Endowment Fund, Inc. filed their Response in Opposition to Plaintiffs' Motions to Remand [Doc. 12] on November 5, 2012. Defendant Polk filed his Response in Opposition to Plaintiffs' Motions to Remand [Doc. 13] on November 7, 2012. Plaintiffs filed their replies [Doc. 14] on November 14, 2012.

## DISCUSSION

**I.** **Standard**

When an action is removed from state court, a federal district court is required to first determine whether it has original jurisdiction over the plaintiff's claims. In this case, that issue depends on whether the court has federal question jurisdiction under 28 U.S.C. § 1331.

"The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (*Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673 (1994). Because removal jurisdiction raises significant federalism concerns, federal courts are directed to strictly construe removal statutes. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S. Ct. 868 (1941).

If federal jurisdiction is doubtful, a remand to state court is required. *Md. Stadium Auth.*, 407 F.3d at 260. On the other hand, if this Court has jurisdiction, it is required to

exercise it. ***Gum v. Gen. Elec. Co.***, 5 F. Supp. 2d 412, 415 (S.D. W. Va. 1998) ("It is well-established federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them' unless and until an exception to its jurisdiction applies") (internal citations omitted).

Federal question jurisdiction exists for all civil actions arising under the Constitution and laws or treaties of the United States. **28 U.S.C. § 1331.** Under the well-pleaded complaint rule, the plaintiff's complaint is determinative of federal jurisdiction. Thus, the federal question jurisdiction must be clear from the face of the complaint and cannot be based on federal law defense or plaintiff's anticipation of such defense. *See **Merrell Dow Pharm., Inc. v. Thompson***, 478 U.S. 804, 808, 106 S. Ct. 3229, 3232 (1986).

Also, district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." ***Shanaghan v. Cahill***, 58 F.3d 106, 109-110 (4th Cir. 1995) (quoting 28 U.S.C. § 1367(a)). Therefore, supplemental jurisdiction "allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy." ***Id.*** (quoting ***United Mine Workers of Am. v. Gibbs***, 383 U.S. 715, 724-26, 86 S. Ct. 1130, 1138-39 (1966)). In deciding whether the claims form part of the same case or controversy, the courts look to whether "[t]he state and federal claims . . . derive from a common nucleus of operative fact." ***Gibbs***, 383 U.S. at 725; *see also **White v. Cnty. of Newberry, S.C.***, 985 F.2d 168, 171 (4th Cir. 1993) (stating a district court may properly exercise supplemental jurisdiction over state claims if they arise out of a common

nucleus of operative facts such that plaintiff would ordinarily be expected to try claims in one judicial proceeding). A court has discretion to exercise supplemental jurisdiction. Under 28 U.S.C. § 1367, a court may decline to exercise supplemental jurisdiction based on statutory factors and an analysis of judicial economy, convenience, and fairness to the parties. *Gibbs*, 383 U.S. at 726. The section 1367(c) factors include whether: (1) the claim raises a novel or important issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) all claims over which the court has original jurisdiction are dismissed, or (4) other compelling reasons exist for declining jurisdiction. **28 U.S.C. § 1367(c).**

## II.  <u>Analysis</u>

The Plaintiffs argue in their Motions to Remand that "[i]ssues of state law predominate . . . and the statute that Defendants allege confers original jurisdiction on this Court, the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.. §§ 1692(c) and (d), is one over which state and federal courts have jurisdiction." [Doc. 7]. Alternatively, the Plaintiffs argue that if the Court maintains original jurisdiction over the Plaintiffs' civil RICO claims, it should still remand the Plaintiffs' state law claims as those claims are novel and complex issues of state law and substantially predominate over the RICO claims.

### A.    **Federal Question Jurisdiction**

The defendant in a state court action may remove the action to federal court as long as the federal court has original jurisdiction over the matter. **28 U.S.C. § 1441(a)**. Federal courts have original jurisdiction over "all civil actions arising under the Constitution, law, or treaties of the United States." **28 U.S.C. § 1331**. Thus, "removal is appropriate if the face

8

of the complaint raises a federal question." **Lontz v. Tharp**, 413 F.3d 435, 439 (4th Cir. 2005).

Plaintiffs urge the Court to remand the case to state court because the state courts have concurrent jurisdiction over civil RICO claims. Plaintiffs rely on *Tafflin v. Levitt*, 493 U.S. 455, 110 S. Ct. 792 (1990), to argue that removal is improper because the state court has concurrent jurisdiction. However, the holding in *Tafflin* merely provides that state courts have concurrent jurisdiction with federal courts over civil RICO claims. **Tafflin**, 493 U.S. at 467;110 S. Ct. at 799. Concurrent jurisdiction does not strip a federal court of jurisdiction, and a defendant may properly remove such a case to federal court unless Congress states otherwise. **Whitfield v. Fed. Crop Ins. Corp.**, 557 F.2d 413, 414 (4th Cir. 1977) (holding that where concurrent jurisdiction exists, claim may be removed unless Congress states otherwise); *see also* **Bahari v. Countrywide Home Loans**, No. Civ. CCB-05-2085, 2005 WL 3505604 *3 (Dec. 16, 2005) (holding removal was proper because the court had jurisdiction over the RICO claims and noting "[c]ourts in the Fourth Circuit have long held that concurrent jurisdiction does not preclude a defendant's right to remove an action to federal court."); **Callison v. Charleston Area Med. Ctr., Inc.,** 909 F. Supp. 391, 394 (S.D.W. Va. 1995) ("The existence of concurrent jurisdiction does not require remand."). Although federal courts are courts of limited jurisdiction, the Supreme Court recently emphasized that federal courts "have no more right to decline the exercise of jurisdiction which is given, then to usurp that which is not given." **Mims v. Arrow Fin. Servs., LLC**, __ U.S. __ , 132 S. Ct. 740, 747 (2012) (citing **Cohens v. Virginia**, 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821)).

The Court has original jurisdiction over Plaintiffs' Count One of their Amended

Complaint as the face of the Complaint provides for claims arising under the laws of the United States, specifically under 18 U.S.C. § 1962. Additionally, Congress has not excluded federal jurisdiction over RICO claims nor made state court jurisdiction exclusive. **18 U.S.C. § 1965(a)** (empowering federal courts to hear RICO claims). Accordingly, this Court has federal question jurisdiction over the Plaintiffs' RICO claim and will exercise that jurisdiction.

### B. Supplemental Jurisdiction

A federal court may exercise supplemental jurisdiction over a plaintiff's state law claims that are asserted with claims of which this court has original jurisdiction. Title 28 U.S.C. § 1367(a) provides, in pertinent part:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The Court's determination of whether to exercise such jurisdiction is discretionary. *Shanaghan*, 58 F.3d at 109. The doctrine of supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614 (1988)).

The statute also provides that district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

**28 U.S.C. § 1367(c)**.

Plaintiffs argue that the Court should remand their state law claims based upon the first and second factors contained in 28 U.S.C. § 1367(c). Plaintiffs contend that their state law claims raise novel or complex issues of state law because the West Virginia Consumer Credit and Protection Act has never been applied "to student consumers of a university's educational services" or applied contract law to "the scope of agreement between a college or university and its students." [Doc. 7, p. 5].  Also, Plaintiffs argue that their state law claims substantially predominate over the federal law claims because there is only one federal claim alleged in the Complaint compared to seven state law claims.[1]

Defendants Mountain State University, Inc., Mountain State University Building Company, Mountain State University Foundation, Inc., and Mountain State University Endowment Fund, Inc. argue that the state law claims do not raise novel or complex issues of state law as district courts "interpret and apply the West Virginia Consumer Credit and Protection Act to a variety of seller/consumer relationships everyday without hesitation." [Doc. 12, p. 9].  Defendants also contend that the state law issues do not substantially dominate simply because more state law claims are asserted than federal law claims. *Id.*  Defendants argue that a remand of Plaintiffs' state law claims would result in two separate actions requiring the same parties, the same witnesses, and the

---

[1]The Court notes that the Plaintiffs' cases are not the only ones not before the West Virginia Supreme Court of Appeals' Mass Litigation Panel.  In fact, there are twenty-one other cases filed against Mountain State University currently pending before this Court.

same evidence; thus, a remand of the state law claims would not be in the best interests of judicial economy. [Doc. 12, p. 11]. Defendant Polk also joined the MSU Defendants in their opposition to the pending remand motions. [Doc. 13, p. 2].

Remand of the state law claims is inappropriate for several reasons. First, the United States Supreme Court emphasized that "a federal court has jurisdiction over an entire action, including state law claims, whenever the federal law claims and state law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' The Court intended this standard . . . to broaden, the scope of federal pendent jurisdiction." *Cohill*, 484 U.S. at 349, 108 S. Ct. at 618 (citing *Gibbs*, 383 U.S. at 725, 86 S. Ct. at 1138). In this case, the federal and state law claims arise out of a common nucleus of operative fact: the Defendants' alleged racketeering scheme and the loss of MSU's accreditation status.

Second, the district court, in exercising its discretion, considers "convenience and fairness to the parties [and] the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 109. The interests of judicial economy, convenience and fairness weigh in favor of the Court exercising supplemental jurisdiction. As explained above, the Court has jurisdiction over the RICO claim. Therefore, if the Court would remand the accompanying state law claims, there would be two separate lawsuits with the same parties, same witnesses, same evidence, and same facts. This is not in the interest of judicial economy. Thus, considerations of judicial economy weigh in favor of the Court exercising supplemental jurisdiction over the state law claims.

Third, the Plaintiffs' reliance on the first and second 28 U.S.C. § 1367(c) factors is unpersuasive. As to the first factor, 28 U.S.C. § 1367(c)(1), the state law claims do not raise novel or complex issues of state law. The state law claims are based on the West Virginia Consumer Credit and Protection Act and contract law. Although state law may not have been applied in a college setting, the West Virginia Consumer Credit and Protection Act has routinely been applied by district courts. Thus, this situation does not appear to rise to a level justifying remand under subsection (1).

As to the second factor, 28 U.S.C. § 1367(c)(2), the state law claims do not substantially predominate over the RICO claim. Plaintiffs partially rely on the amount of their state law claims to argue that state law claims substantially predominate over the one federal claim. However, the inquiry under subsection (2) is a "'value judgment' for the court. The question comes down to 'whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims.'" *Clark v. Milam*, 813 F. Supp. 431, 435 (S.D.W. Va. 1993) (holding that "two RICO counts are at the heart of Plaintiff's complaint") (quoting *Moore v. DeBiase*, 766 F. Supp. 1311, 1319 (D.N.J. 1991)). Although Plaintiffs bring only one claim under the RICO Act, they allege multiple violations and seek recovery of damages under the Act, including treble damages. *See Dashields v. Robertson*, 215 F.3d 1318, *3 (4th Cir. 2000) (noting that districts courts have wide discretion to exercise supplemental jurisdiction that "even extends to cases in which state law merely predominates"); *State v. Byrd*, No. 1:09-CV-852, 2010 WL 4510984 (M.D.N.C. Nov. 2, 2010) (denying motion to remand because state law issues did not clearly predominate and Plaintiffs' RICO claim allegedly involved numerous violations for which the Plaintiffs

13

sought damages under the Act, including treble damages); ***Greiner v. Columbia Gas***

***Transmission Corp.***, 41 F. Supp. 2d 625, 628 (S.D.W. Va. 1999) (finding that state law

property and personal injury issues are not so complex or salient as to warrant remand).

Therefore, the Court does not find that state law issues substantially predominate over

the federal RICO claim.  Accordingly, the Court, in its discretion, exercises supplemental

jurisdiction over the state law claims.

## CONCLUSION

For the reasons stated above, this Court finds that the Plaintiffs' Motions to Remand

should be, and hereby are, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: December 21, 2012.

GINA M. GROH
UNITED STATES DISTRICT JUDGE